IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID KOMPERDA, <br><br> Plaintiff, <br> v. <br><br> CAROLYN W. COLVIN, <br> Acting Commissioner of Social Security, <br><br> Defendant. | No. 13 C 4060 <br><br> Judge Virginia M. Kendall |

# MEMORANDUM OPINION AND ORDER

Plaintiff David Komperda seeks review of the Social Security Administration's decision denying him disability insurance benefits under Title II of the Social Security Act. *See* 42 U.S.C. § 423. Komperda has an established history of depression and addiction to alcohol and drugs. On May 25, 2012, an Administrative Law Judge ("ALJ") determined that Komperda was not disabled under federal law. The Social Security Appeals Council declined to review the ALJ's decision and this case followed pursuant to 42 U.S.C. § 405(g). Komperda challenges the ALJ's decision alleging that the conclusion that he is not disabled was not supported by the evidence and that the Council abused its discretion in not granting him a hearing. Specifically, he claims that the ALJ failed to sufficiently take into account his own psychiatrist's evaluation and failed to take into account other evidence regarding his physical limitations. He moved for summary judgment and seeks to have the determination of the ALJ reversed, or in the alternative, remanded for another hearing. For the following reasons, the Court grants Komperda's motion in part and remands this case for further proceedings consistent with this opinion.

## BACKGROUND

Komperda applied for disability insurance benefits on January 25, 2010, alleging disability beginning on November 1, 2009. (R. 60). His claims were denied both initially and upon reconsideration. (R. 62-64, 72-75). At Komperda's request, a hearing was held on March 23, 2012, at which time an ALJ heard testimony from Komperda, represented by counsel, and Jeffrey Lucas, a vocational expert. (R. 30-59). On May 25, 2012, the ALJ issued a written decision denying Komperda benefits. (R. 10-20). The ALJ found that, while Komperda was severely impaired by substance abuse and bipolar disorder, he was not disabled under the Act. (R. 13-20). The ALJ found that Komperda does not have an affective disorder in the absence of substance use and that there was no evidence he was unable to function outside a highly supportive living arrangement. (R. 14-15). Although the ALJ did not suggest Komperda could return to lifting transmissions, he did conclude that Komperda was capable of performing various unskilled tasks. (R. 13, 15). The Appeals Council denied Komperda's appeal on March 29, 2013 and this case followed. (R. 1-6).

**A. Mental Health**

Komperda was born in Chicago on April 23, 1975. (R. 301). He is 39 years old and has been seeing a psychiatrist for major depression since he was a teenager. (R. 234, 236). Komperda began heavily using alcohol and cocaine in his 20s, but his substance use was in remission from around 2004 to 2009. (R. 288). Though the Record does not indicate when Komperda was first diagnosed with bipolar disorder, Komperda's treatment for both bipolar disorder and alcohol dependence began no later than January 7, 2008. (*See* R. 343). Between 2008 and 2012, Komperda was diagnosed with bipolar disorder by four separate doctors and was hospitalized twice due to psychotic episodes. (*See* R. 285 (Dr. Art Pogre); 301 (Dr. Uzoma Okoli); 343 (Dr.

Daram Reddy); 445 (Dr. Kirk Boyenga)). Komperda testified before the ALJ that he has been hospitalized three or four times over the course of his life, often due to his risk of suicide and each time because he stopped taking his prescribed medications. (R. 37).

In January 2008, after being sober for about four years, Komperda began seeing psychiatrist Daram Reddy once a month to have his bipolar medications monitored. (R. 343). After over a year of seeing Dr. Reddy, Komperda stopped taking his medications. (R. 234). On July 9, 2009, six days after he stopped his medications, Komperda's mother took Komperda to the emergency room because he said voices were telling him to commit suicide and he expressed thoughts of jumping in front of a moving car. (*Id.*). His blood alcohol level was 294 mg per deciliter. (*Id.*). At the hospital, Komperda was again diagnosed with bipolar disorder. (R. 285).

At some point during the next several months, Komperda again relapsed into drinking and, according to his mother and stepfather, began isolating himself and threatening to hurt them when he was intoxicated. (R. 298). On February 19, 2010, Komperda presented at the Vista Medical Center Emergency Room after trying to end his life with alcohol and pills. (R. 300). He appeared agitated, anxious, and depressed. (R. 298). He was intoxicated and withdrawing from alcohol with confusion and sweating. (*Id*). For a third time, Komperda was diagnosed with bipolar disorder: this time by Dr. Uzoma Okoli. (R. 301). He was also diagnosed with cocaine dependence in remission and alcohol withdrawal, and was identified as a moderate suicide risk. (R. 301, 331, 336). Komperda would later tell an evaluator that he had lost his job and was tired of being unemployed. (R. 300).

Two days after Komperda's February admission to Vista, Komperda was transferred to Glen Lake Terrace Nursing Home where he stayed for the next several weeks. (R. 388). During his residency at Glen Lake, Dr. Reddy referred Komperda to Dr. Okoli for possible

electroconvulsive therapy. (R. 300). Between February 26 and March 31, 2010, Komperda underwent 12 electroconvulsive therapy ("ECT") treatments for his bipolar depression. (R. 301, 303-309, 377-382). At the end of the last session, Komperda reported feeling euthymic. (R. 382).

Komperda has maintained sobriety and been compliant with his medications since early 2010, around the time he completed ECT treatments and began living in his own apartment. (*See* R. 17). Since that time, he has not been hospitalized, experienced severe mood swings, or suffered any severe psychotic episodes. (*See id*). He was, however, diagnosed with bipolar disorder yet again on June 21, 2010. (R. 445). And, a September 2010 report from Dr. Reddy stated that Komperda had marked restrictions on his concentration and ability to function socially. (R. 343-344). Dr. Reddy also noted that if Komperda were to return to work, he would likely miss three or more days of work monthly due to his bipolar disorder and alcohol dependence. (*Id*.).

**B. Physical Health**

Aside from his mental health challenges, Komperda also suffers from persistent back pain.[1] (R. 172, 486, 352). From December 2009 to December 2010, Komperda saw Dr. Anwuli Okoli eight times for pain evaluation and treatment. (R. 352-65, 489). During that period, Komperda told Dr. Okoli that his pain kept him from participating in daily activities such as going to work. (R. 352). Dr. Okoli treated him for various levels of pain, numbness, and tenderness in his back, chest, and legs. (R. 352-65, 489).

On November 16, 2010, after filing this application, Komperda was evaluated by Dr. Francis Vincent. (R. 479-486). Dr. Vincent reported that Komperda had a slight decrease in the

---

[1] Komperda claims to have herniated discs. (R. 114). Although a few records list herniated discs as part of Komperda's medical history, (*see, e.g.*, R. 298), there is no formal diagnosis of such herniation and there is no evidence that Komperda continues to suffer from herniated discs. This Court makes no determination as to the veracity of Komperda's allegation, but proceeds with this analysis based on the records of back pain before it.

4

range of motion of his lumbosacral spine, but had normal muscle strength, reflexes, senses, and gait. (R. 486). Dr. Vincent also found that Komperda's complaints of pain and physical limitations exceeded what would be expected based on his own objective findings. (*Id*.). Dr. Vincent therefore concluded that Komperda's allegations of severe pain were only partially credible. (*Id*.).

That same month, internist Dr. Scott Kale also evaluated Komperda. (R. 466). Dr. Kale reported that Komperda had minimal lumbar range of motion restriction and no physical difficulty performing maneuvers (R. 469-72). Dr. Kale did not list lumbar impairment as one of Komperda's problems and, moreover, Komperda told the ALJ that he did not have any physical problems that would prevent him from working. (R. 474, 44).

**C. Work and Education**

Komperda's highest level of education is twelfth grade. (R. 115). He worked fulltime as an auto mechanic from 1990 until November 1, 2009. (R. 116, 424). As an auto mechanic, Komperda rebuilt motors and transmissions, and diagnosed and repaired automotive problems. (R. 116). Though he has been unemployed since November 1, 2009, Komperda has been volunteering at a gun store owned by his father and uncle since the beginning of 2011. (R. 39, 114). Komperda estimates that he volunteers 18 hours or less per week at the gun store. (R. 40). At the gun store, Komperda cleans the bathroom, vacuums, takes pictures and payment for FOID cards applications, and sometimes answers the phone. (R. 39).

**D. Limitations and Supportive Living Arrangements**

Komperda currently lives alone in an apartment in Waukegan, Illinois that is affiliated with the Independence Center. (R. 33). He pays 350 dollars per month in rent. (R. 33-34). Komperda was first referred to the Center in February 2010 while he was psychiatrically

hospitalized for a suicide attempt at Glen Lake Terrace Nursing Home. (R. 436). Prior to that time, Komperda was living at home with his parents. (R. 300, 301).

Upon admission to the Center in April 2010, Komperda met the criteria for residential structured treatment and began receiving group therapy. (R. 415). Komperda continues to visit the Center about twice a week to attend meetings, visit the food pantry, talk with his counselor, and eat lunch. (R. 34, 48-49). Without the support of the Center, Komperda might not continue taking his medications regularly. (R. 37).

When Komperda is not at the Center, his mother drives him to and from the family's gun store on days he volunteers there. (R. 39). She also helps Komperda pay his bills and drives him to his psychiatrist appointments and to run errands. (R. 40, 518). Komperda testified that his mother or somebody else needs to keep him on a schedule because he cannot do so independently. (R. 42). Komperda is, however, able to consistently change his clothes, do laundry, and take a shower. (R. 46).

In June 2010, Dr. Kirk Boyenga evaluated Komperda and found that he was capable of performing simple tasks, following direction, and leaving home alone. (R. 440). Dr. Boyenga attributed Komperda's improved condition to "the treatment rendered and/or cessation of alcohol abuse." (*Id*.). He also recognized, however, that Komperda had "not been assessed in the full, sustained remission from his addiction." (*Id*.).

On October 19, 2010, Eric Goldspiel, a case manager from the Independence Center found that Komperda suffered marked restrictions on his daily activities, socialization, and ability to sustain concentration, which resulted in his failure to complete tasks. (R. 461-462). Goldspiel observed that Komperda had "a severely limited set of skills in coping with others," "poor impulse control," an "inability to sustain effective employment," and an attention span that

only lasts "seven to ten minutes." (R. 462). He further concluded that living outside a highly supportive and protective setting, Komperda would suffer severe isolation, a limited ability to maintain self-sufficiency, and an inability to pay his bills or maintain appointments with his psychiatrist. (*Id*.).

The more recent reports of Komperda's mental health are limited and come from his psychiatrist, Dr. Daram Reddy. (R. 518-520). In late 2011 and early 2012, Dr. Reddy reported that Komperda was complying with his bipolar medications, maintaining sobriety, and not experiencing any mood swings. (*Id*.). Komperda's underlying diagnosis of bipolar disorder, however, has remained unchanged.

### E. Vocational Expert Testimony

At the hearing before the ALJ, vocational expert Jeffrey Lucas opined that Komperda could attain a number of light, unskilled jobs in the Illinois regional economy such as: an ampoule, someone who fills small glass tubes; cafeteria attendant; and folding machine operator. (R. 51-52). Lucas also noted, however, that these unskilled tasks require an individual "to be on task approximately 87 percent" of the time. (R. 54). Therefore, someone who could not perform these jobs "by themselves consistently without making mistakes or without separate prompts from a supervisor" would not be likely to keep one of these jobs. (*Id*.). Lucas similarly opined that someone who needs to take an unscheduled break every half hour would be unable to keep one of these jobs. (R. 55).

## **LEGAL STANDARD**

A reviewing court should affirm the Commissioner's final decision where it is supported by "substantial evidence" and is free from legal error. *Bates v. Colvin*, 736 F.3d 1093, 1097-98 (7th Cir. 2013) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "such relevant evidence as

7

a reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where conflicting evidence allows reasonable minds to differ, the responsibility of determining disability belongs to the ALJ and not the courts. *See Heir v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). A court may not "reweigh the evidence or substitute [its] own judgment for that of the ALJ." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012).

However, the ALJ's decision must rest on "adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must "build a logical bridge from the evidence to [his] conclusion, but [he] need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler*, 688 F.3d at 310. If the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal quotation marks and citation omitted).

## DISCUSSION

In determining whether a claimant is disabled and ineligible for supplemental security income, an ALJ uses a sequential five-step inquiry that asks (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Kastner*, 697 F.3d at 646.

Here, the ALJ found that Komperda satisfies the first two steps because he has not engaged in substantial gainful activity since November 1, 2009 and has severe impairments of

8

substance abuse and bipolar disorder. (R. 12-13). The ALJ further opined that even absent substance use, Komperda would continue to have a severe impairment or combination of impairments. (R. 14). He ultimately concluded, however, that Komperda did not satisfy the Commissioner's listed impairments under step three in the absence of alcohol abuse. (R. 14). Komperda challenges the ALJ's adverse determination at step three, primarily arguing that the ALJ erred in: determining Komperda did not have an affective disorder; determining that Komperda's alcohol use was a factor materially contributing to his disability; the weight it assigned to Dr. Reddy and Mr. Goldspiel's respective opinions; and failing to consider evidence of his physical impairments. Because the ALJ failed to construct a logical bridge between its conclusions and the evidence presented in this matter, the ALJ's decision is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**A. The ALJ's Determination of Whether Komperda has an Affective Disorder**

Komperda disputes the ALJ's basis for finding that absent substance use he does not have an impairment within the meaning of 20 C.F.R. Part 4040, Subpart P, App. 1. (R. 14). An individual has an affective disorder under Section 12.04 where he meets the requirements listed in both paragraphs A and B or the requirements identified in paragraph C. In this case, the ALJ failed to support its conclusion that Komperda did not satisfy the requirements of paragraph C.

Paragraph C of Listing 12.02 requires:

> C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Part 404, Subpart P, App. 1, § 12.02C. In determining that Komperda did not qualify under the paragraph C criteria, the ALJ stated: "[T]here is no evidence of an inability to function outside a highly supportive living arrangement" during "sustained periods of sobriety." (R. 15). The record, however, contains significant evidence that Komperda is unable to function outside of a supportive living environment in the absence of substance use.

In September 2010, after Komperda was sober for about seven months, one psychiatrist observed that Komperda had marked restrictions on his concentration, persistence or pace, marked restrictions of social functioning, and would likely miss three or more days of work monthly due to bipolar disorder and alcohol dependence. (R. 343-344). One month later, a case manager reported that Komperda was living in a "highly supportive and protective setting" and that outside such a setting he would suffer "severe isolation, limited ability to maintain self-sufficiency, non-payment of bills, failure to maintain appointments with psychiatrist." (R. 462). Komperda testified that his mother keeps him on a schedule, drives him to his psychiatric appointments, and takes him to run other errands. (R. 40, 42). Even the vocational expert testifying before the ALJ said that Komperda would need "sympathetic sheltering" to work the jobs he recommended in the U.S. economy. (R. 53).

Moreover, although the ALJ observed that Komperda's mental impairments are controlled when he takes his medications, (R. 36-37), he ignored that Komperda has a history of stopping his medications. (R. 37). There is evidence that each of Komperda's prior psychiatric hospitalizations resulted because he failed to take his medications and, more importantly, there is evidence that Komperda might stop taking his medications again if the Independence Center

stops monitoring him. (*Id*.). This Circuit has recognized that people with serious psychiatric problems are "often incapable of taking their prescribed medications consistently" and antidepressants "often produce side effects that make patients reluctant to take them." *Martinez v. Astrue*, 630 F.3d 693, 697 (7th Cir. 2011). And, although the ALJ is not required to evaluate every piece of testimony and evidence submitted, the ALJ cannot simply ignore evidence that points to a finding of disability. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

The ALJ may be able to articulate support by substantial evidence for his decision that Komperda does not satisfy the paragraph C criteria, but this Court is unable to trace the path of his reasoning on this issue. Therefore, the errors in this part of the analysis require remand for a more comprehensive discussion of the evidence considered by the ALJ.

### B. The ALJ's Evaluation of Whether Substance Abuse Was a Factor Materially Contributing to Komperda's Disability

Under the Social Security Act, "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would…be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). Where an applicant for disability benefits is a substance abuser and has a potentially disabling illness, the ALJ must determine whether the applicant would be disabled absent his substance abuse. *Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006); See 20 C.F.R. § 404.1535, 416.935. Although the claimant bears the burden of providing evidence that alcoholism is not a contributing factor to his disability, the ALJ must still "adequately disentangle" the effects of an applicant's alcohol abuse from his other impairments. *Harlin v. Astrue*, 424 Fed.Appx. 564, 567-68 (7th Cir. 2011).

In this case, the ALJ adequately disentangled Komperda's substance abuse from his other impairments. Each substance of abuse has different "intoxication and long-term physiologic

effects" and "there is a wide variation in the duration and intensity of substance use among claimants with DAA." SSR 13-02P, 2013 WL 621563, *11. Therefore, the ALJ must have discretion in evaluating materiality on a case-by-case. Here, the ALJ did not err in focusing on Komperda's functioning and capabilities in his current period of abstinence to determine whether substance abuse materially contributed to his impairment. (*See* R. 14-15). Often, evidence from a period of abstinence is the best evidence for determining the relationship between alcohol use and other impairments. *See* SSR 13-02P, 2013 WL 621563, *8. The ALJ appropriately relied on Komperda's sustained levels of mental and emotional stability during his recent period of sobriety, as well as his ability to assist in his family's store, interact with customers, follow simple directions, make simple decisions, use public transportation, and apply for jobs in the automotive field in its materiality determination. (R. 14-17).

**C. The ALJ's Weighing of the Opinions of Dr. Daram Reddy and Mr. Eric Goldspiel**

However, the ALJ's decision was flawed in its evaluation of the appropriate weight to assign the opinions of Dr. Daram Reddy and Mr. Eric Goldspiel. Dr. Reddy evaluated Komperda numerous times between January 2008 and January 2012 and was responsible for prescribing Komperda psychiatric mediations. (*See* R. 17). In fact, as the treating psychiatrist that observed Komperda both sober and under the influence of alcohol, Dr. Reddy had has the most comprehensive evaluation of Komperda and is best able to determine his ability to act independently. The ALJ made two unsubstantiated determinations regarding the weight of Dr. Reddy's opinions. First, the ALJ "infer[red] that the opinion of Dr. Reddy was only longitudinally relevant until December 2010." (R. 14). Second, the ALJ assigned "his opinion only minimal weight in assessing the claimant's functioning while sober." (R. 17). The problem was not that the ALJ failed to assign a weight to Dr. Reddy's opinion, but that he did not

12

substantiate the weight he did assign. The social security regulations require the ALJ to consider a number of factors when deciding how much weight to give the opinion: "(1) the [l]ength of the treatment relationship and the frequency of examination, because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant long enough to have obtained a longitudinal picture of the impairment, the more weight [her] opinion deserves; (2) the [n]ature and extent of the treatment relationship; (3) [s]upportability, i.e., whether a physician's opinion is supported by relevant evidence, such as medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014) (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2-5).

This Court will not speculate as to why the ALJ chose to assign "minimal weight" to Dr. Reddy's opinions. The ALJ did not discuss any of the factors listed above in his opinion and we cannot now assess whether he appropriately chose how much weight to give Dr. Reddy's opinions. On remand, the ALJ should address these factors. *See, e.g., Scrogham*, 765 F.3d at 698 (remanding where the ALJ did not address the factors in determining the weight of a physician's opinion); *Hofstein v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (noting that the section 1527(c) factors are "designed to help the administrative law judge decide how much weight to give the treating physician's evidence").

With regard to Mr. Goldspiel, the ALJ stated: "He was not a medically-acceptable treating source under SSR 06-3p, and his remarks are discounted because they are not supported longitudinally or by actual functioning after [October 2010]." (R. 18). Again, the ALJ's unsubstantiated discrediting of Mr. Goldspiel's opinion makes it impossible for this Court to assess whether he appropriately weighed the opinion. First, SSR 06-3p does not preclude courts

13

from considering non "medically-acceptable treating sources." On the contrary, the regulation states that "[i]n addition to evidence from the acceptable medical sources … [ALJs] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work. Other sources include … non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. § 404.1513(d)(4). The Social Security Administration, therefore, expressly considers such non-medical opinions.

Moreover, the ALJ must substantiate its conclusory statement that Mr. Goldspiel's opinions are "not supported longitudinally or by actual functioning after [October 2010]." This Court's review of the record has revealed longitudinal support for the opinion that Komperda is "given to severe self-isolation, chronic mood swings and poor impulse control," including psychiatric evaluations, hospital records, and observations by his mother and stepfather. (*See, e.g.*, R. 407, 236, 298). This Court also notes that the ALJ's failure to explain his discounting of Mr. Goldspiel's opinions is compounded by his lack of explanation for why the "claimant's longitudinal functioning more closely approximates the conclusions outlined by the non-examining state agency consultant." (R. 18). If not the evaluations of Mr. Goldspiel and the state agency consultant, this Court does not know what the ALJ is relying on to determine Komperda's longitudinal functioning. More simply put, without more thorough explanation from the ALJ, this Court cannot evaluate whether the ALJ properly weighed Mr. Goldspiel's opinions.

The ALJ may be able to articulate support to discount the opinions of Dr. Reddy and Mr. Goldspiel, but this Court is unable to trace the path of his reasoning on this issue. Therefore, the errors in this part of the analysis require remand for a more comprehensive discussion of the evidence considered by the ALJ.

**D. The ALJ's Evaluation of Komperda's Back and Leg Pain**

The ALJ's failure to consider the effect of Komperda's back and leg pain on his functional limitations also requires remand. An RFC represents the maximum a claimant can perform on a "regular and continuing basis" despite his limitations. *See, e.g., Corniels v. Colvin*, No. 11 C 4267, 2014 WL 5420132, at *5 (N.D. Ill. Oct. 24, 2014) (citing Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Although the ALJ is not obligated to "discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

In this case, Komperda claimed in his benefits application and before this Court that his ability to work is impaired by pain he suffers from a herniated disc. (*See* R. 114). The record contains reports from three doctors about Komperda's leg and back pain, including a diagnosis of lumbar degenerative joint disease and treatment for various levels of pain, numbness, and tenderness. (R. 352). Oddly, the ALJ appears to have impliedly acknowledged Komperda's physical limitations since he recommended Komperda for "light" jobs, despite the fact that Komperda previously worked as an auto mechanic for nineteen years. (R. 19, 50, 116). If the ALJ did consider Komperda's physical restraints in his RFC and ultimate ruling, the ALJ needed to articulate that more clearly. The fact that Komperda's back and leg pain may not be disabling on their own only warrants discounting their severity, not ignoring them altogether. *See Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009).

For the reasons stated above, this Court concludes that the ALJ did not build the necessary logical bridge from the evidence considered to his ultimate conclusion that Komperda could perform light, unskilled work. The ALJ's flawed reasoning cannot be deemed harmless.

## **CONCLUSION**

For the foregoing reasons, the Court grants Komperda's motion in part. The judgment is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 2/13/2015